# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO TITLE INSURANCE COMPANY, a Nebraska Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ELVIR SINIKOVIC, individually; DENNIS QUIJANO, individually; LARISA SPIRTOVIC a/k/a LARISA SINIKOVIC, individually; M&M FLOORING AND CONSTRUCTION, INC.; RAINBOW AS, INC., an Illinois Corporation; ADNAN SPIRTOVIC, individually; DC&L, LLC, an Illinois Limited Liability Company; and PRESTIGE OF CHICAGO, INC., an Illinois Corporation, <br><br> Defendants. | No. 11 C 2504 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Elvir Sinikovic ("Elvir") masterminded a scheme in which he misappropriated over $1.6 million over the course of four years from his employer, Plaintiff Chicago Title Insurance Company ("Chicago Title"), involving the other Defendants in this action—Dennis Quijano ("Dennis"), Larisa Spirtovic ("Larisa"), M&M Flooring and Construction, Inc. ("M&M"), Rainbow AS, Inc. ("Rainbow AS"), Adnan Spirtovic ("Adnan"), DC&L, LLC ("DC&L), and Prestige of Chicago, Inc. ("Prestige")—to varying degrees. Chicago Title filed suit against Defendants seeking to recover the misappropriated funds. M&M filed a cross-claim against Elvir, alleging that to the extent it is held liable to Chicago Title, Elvir should be required to pay those amounts instead.[1] The case is now before the Court on Chicago Title's motion for

---

[1] The Court has been unable to locate a response from Elvir to M&M's cross-claim or any further mention on the docket of M&M's cross-claim.

summary judgment [134]. The Court finds that the evidence of record, combined with the negative inference that can be drawn from Elvir's invocation of the Fifth Amendment privilege, warrant granting summary judgment on Chicago Title's breach of fiduciary duty and accounting claims and the award of punitive damages against Elvir, although the amount of punitive damages must be determined by a jury. The undisputed evidence also demonstrates that Chicago Title is entitled to summary judgment on its unjust enrichment claim against all Defendants but Adnan, who has raised a question as to whether he received any money from Elvir's scheme. Because DC&L's purchase of property is the only fund or property identified by Chicago Title over which a constructive trust may be imposed, that is the only portion of Chicago Title's request for a constructive trust that the Court will grant at this time. The Court also finds that there is a question of fact or insufficient evidence to establish that Elvir entered into a conspiracy with Adnan and Rainbow AS, M&M, or Quijano, leaving those claims to be resolved by a jury. Finally, because Chicago Title has not carried its burden to establish why its request for permanent injunctive relief is appropriate and there are remaining liability issues that must be resolved first, the Court defers ruling on that request at this time.

## BACKGROUND[2]

Elvir was hired by Chicago Title in August 2004 as a receptionist and mechanic's lien examiner at its Park Ridge, Illinois office. In July 2005, Elvir was transferred to Chicago Title's Westchester, Illinois location and trained as a title examiner. At the Westchester office, he became the sole construction escrow administrator, responsible for the control, management, and supervision of all construction escrow files held there. This involved collecting and maintaining

---

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and the attached exhibits. *See* Doc. 138. The Court also draws adverse inferences against Elvir and M&M as a result of Elvir's and M&M's corporate representative's invocation of the Fifth Amendment privilege against self-incrimination, as further explained below. All facts are taken in the light most favorable to Defendants, the non-movants.

necessary documentation from contractors seeking payment from specific construction escrow files, and approving and issuing payments from those files to the contractors. In some cases, Elvir was the sole person responsible for verifying the propriety of disbursements.

At all relevant times, Chicago Title maintained a policy that no funds were to be disbursed to a contractor from a construction escrow file unless the necessary paperwork was received and placed in the appropriate file. But during an investigation into Elvir's activities, Chicago Title learned that Elvir did not comply with this policy and instead made disbursements from various construction escrow files to family members, associates, and businesses in which he had an interest, as well as other entities to which he owed money. In total, Chicago Title's investigation revealed that Elvir took at least $1,636,155.42 to which he was not entitled from Chicago Title accounts.

Specifically, between March 21, 2007 and June 11, 2009, Elvir issued at least 121 checks totaling at least $545,189.73 to Rainbow AS. Rainbow AS was a trucking business owned by Adnan, Elvir's then future brother-in-law. Rainbow AS performed no services in connection with the receipt of the funds and none of the escrow files contained appropriate documentation for the disbursements. Adnan acknowledged that neither he nor Rainbow performed any contracting work or provided materials warranting the payments that Rainbow AS received from Chicago Title. Adnan testified that, based on Elvir's representations, he understood that the money was from Elvir's father's investments and that Elvir was asking to deposit it first in Rainbow AS's account so as to pay less in taxes. Adnan testified that he did not question the legitimacy of the transactions. Larisa, Adnan's sister who married Elvir in 2010, also understood the arrangement to be for the same purpose.

3

Adnan testified that after he deposited the checks he received from Elvir in Rainbow AS's account, he would withdraw the money several days later and give it to Elvir. Adnan did acknowledge that because he and Elvir had a joint interest in two trucks owned by Rainbow AS, some of the money that was deposited in Rainbow AS's account remained there and was considered to be Elvir's contribution for the trucks and other business expenses. But aside from the money used as a contribution for Elvir's portion of the trucking expenses for Rainbow AS, Adnan testified that he and Rainbow AS did not retain any money from the Chicago Title checks Elvir issued to Rainbow AS. Adnan also claimed not to have any agreement with Elvir regarding splitting or sharing the funds deposited in Rainbow AS's account.

Elvir also issued checks from Chicago Title to M&M, a flooring and construction contractor associated with Marius Moldovan. Chicago Title's investigation revealed that Elvir issued at least 91 checks from Chicago Title's accounts to M&M, totaling at least $428,997.91, between March 29, 2007 and October 29, 2010. None of the escrow files contained appropriate documentation for the disbursements and M&M did not perform any services in connection with the funds.

Similarly, between May 19, 2010 and February 14, 2011, Elvir issued at least 110 checks totaling at least $541,640.78 from Chicago Title's escrow accounts to Quijano. Again, Quijano had not performed any work to warrant the payments and none of the relevant escrow files contained appropriate documentation. Elvir also caused $50,000 to be transmitted by a wire transfer to Quijano on October 11, 2010. $40,000 of the wire transfer was then used as Larisa's contribution to purchase 2925 W. Touhy, Unit 3, Chicago, Illinois through DC&L. Larisa is one of the members of DC&L, with the remaining members being her dental business partner and his

wife. The property is used for Larisa's dental practice. Larisa testified that she believed the $40,000 came from Elvir's parents.

Elvir is a 50% owner and the corporate secretary of Prestige, which operated a restaurant, Estrada, at 2639-41 W. Peterson Avenue in Chicago. Elvir diverted at least $30,000 from Chicago Title to the operation of Estrada, including for rent payments. Between May 17 and September 14, 2010, Elvir also issued 10 checks from Chicago Title totaling $22,650 to Hasim Mujic, Zaim Zolja, Sanela Ovnovich, and David Zaya.[3] There was no documentation in Chicago Title's files to support these disbursements.

Elvir also used money from Chicago Title to pay for expenses associated with his wedding to Larisa on July 4, 2010. On June 29, 2010, he approved, issued, and delivered a check for $14,873 from Chicago Title to Café La Cave, the restaurant where he and Larisa held their wedding reception . That same day, he also issued and delivered a $2,804 check drawn on a Chicago Title account to Carusel Linen, which provided tablecloths and seat covers for their reception. Larisa testified that she did not know that Elvir used money from Chicago Title to pay for these wedding expenses and that she instead believed that the money was coming from Elvir's parents.

Larisa also testified that Elvir did not speak to her about the checks he received from Chicago Title and deposited into various accounts or gave to Adnan to deposit in Rainbow AS's account. She also testified that Adnan never told her to use Rainbow AS's bank account for her personal expenses nor did she ever use that account for personal expenses. She also claimed that she had not been aware that Elvir was taking money from Chicago Title.

---

[3] Chicago Title does not identify who these individuals are or for what purpose the disbursements were made.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

The Court's resolution of Chicago Title's motion is hindered by the non-participation in the briefing process, and generally the litigation, of a number of the parties. Elvir, Quijano, M&M, and Prestige, although all represented and provided with extensions of time to file their responses to Chicago Title's motion, did not do so.[4] But their failure to respond does not automatically entitle Chicago Title to judgment against these Defendants, for Chicago Title must still demonstrate that based on the uncontroverted facts, it is entitled to judgment as a matter of

---

[4] The Court also has been unable to locate Quijano's answer on the docket, but Chicago Title has not moved for a default judgment against Quijano.

law. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) ("'[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant.' [Plaintiff] must still demonstrate that it is entitled to judgment as a matter of law." (citation omitted)). Chicago Title's efforts to prove its case, however, are further hampered by Elvir's and Moldovan's invocation of the Fifth Amendment privilege against self-incrimination.[5] Further, M&M designated Moldovan as its Rule 30(b)(6) deponent and the parties stipulated that his individual deposition testimony would be considered M&M corporate testimony despite the fact that he refused to answer any question posed to him based on the possibility that his answers would incriminate him.

The Fifth Amendment protects an individual from "answer[ing] official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 76, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973). But an adverse inference may be drawn in a civil case against an individual invoking the Fifth Amendment privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). In proving its case, however, a party may not rest on the adverse inference alone: "Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *LaSalle Bank*, 54 F.3d at 390; *Clancy v. Coyne*, 244 F. Supp. 2d 894, 899 (N.D. Ill. 2002) ("[A] moving party must introduce actual evidence that the elements of its case exist and cannot rest solely on the negative inference associated with the assertion of the Fifth Amendment privilege.").

---

[5] Chicago Title also refers in its briefing to the fact that Quijano invoked his Fifth Amendment privilege but points to no evidence in the record to support this assertion.

Further, the Fifth Amendment privilege is a personal one and does not attach to corporations. *See Curcio v. United States*, 354 U.S. 118, 122, 77 S. Ct. 1145, 1 L. Ed. 2d 1225 (1957) ("A corporation is not protected by the constitutional privilege against self-incrimination."). This, however, does not bar an individual serving as a Rule 30(b)(6) witness from asserting the privilege. *See City of Chicago v. Reliable Truck Parts Co.*, 768 F. Supp. 642, 646 (N.D. Ill. 1991) ("That [the corporation] cannot assert a Fifth Amendment privilege through its Rule 30(b)(6) deponent does not, however, bar its officers and employees from doing so where the information sought is within their knowledge and is testimonial, rather than documentary and corporate, in nature."). Typically, "[a] witness who asserts his Fifth Amendment rights cannot be compelled to serve as a Rule 30(b)(6) deponent" and the corporation "can be compelled to answer the questions through an agent who will not invoke the privilege." *Bank of Am., N.A. v. First Mut. Bancorp of Ill.*, No. 09 C 5108, 09 C 5109, 2010 WL 2364916, at *4 (N.D. Ill. June 14, 2010); *City of Chicago, Ill. v. Wolf*, No. 91 C 8161, 1993 WL 177020, at *1 (N.D. Ill. May 21, 1993) ("[T]his court cannot compel individuals to testify in their corporate capacity if they otherwise have an individual privilege that can properly be invoked. The corporations, however, can be compelled to answer the questions through an agent who will not invoke the privilege."). But where, as here, the parties stipulated that the corporate deponent was one who invoked his Fifth Amendment privilege and M&M has not proffered another witness, a negative inference can be drawn against M&M despite the fact that it has no Fifth Amendment privilege of its own to assert. *See Laborers' Pension Fund v. Surface Dimensions, Inc.*, No. 07 C 3860, 2011 WL 841515, at *9 (N.D. Ill. Mar. 8, 2011) ("[U]nless the corporate party puts forth an alternative witness, the corporation will suffer the consequences of the witness's conduct in that (a) the opposing testimony stands unrebutted and (b) where

8

appropriate, the fact finder may assume that truthful testimony would have been adverse to the witness."); *Dimensions Med. Ctr., Ltd. v. Principal Fin. Grp., Ltd.*, No. 93 C 6264, 1996 WL 494229, at *7 & n.6 (N.D. Ill. Aug. 21, 1996) (allowing negative inference to be drawn against corporate party from its officers' invocation of Fifth Amendment privilege, even though corporations do not have a Fifth Amendment privilege to assert). With this background in mind, the Court will proceed to analyze Chicago Title's claims.

## I. Breach of Fiduciary Duty (Count I)

Under Illinois law, to establish a breach of fiduciary duty, Chicago Title must show that (1) a fiduciary duty existed, (2) that duty was breached, and (3) the breach of the duty proximately caused damages. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010). As Chicago Title's employee, Elvir owed Chicago Title a duty of loyalty. *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006). The duty of loyalty prohibits employees from engaging in self-dealing and otherwise misappropriating the employer's property. *Id.* On the facts before the Court, there can be no dispute that Elvir breached his fiduciary duty when he misappropriated over $1.6 million from Chicago Title's construction escrow accounts and transferred them to individuals and entities that had no rights to the funds. *See Am. Auto Guardian, Inc. v. Kramer*, No. 05 C 6404, 2008 WL 4553092, at *7 (N.D. Ill. July 8, 2008) ("Embezzlement of one's employer's funds is a classic example of breach of fiduciary duty."); *LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309, 1324 (N.D. Ill. 1996) (breach of fiduciary duty where employee embezzled funds from bank). As a result, Chicago Title suffered a financial loss. Chicago Title is entitled to summary judgment against Elvir on its breach of fiduciary duty claim.

## II. Accounting (Count IV)

Having established that Elvir breached his fiduciary duty, Chicago Title argues that it is entitled to an accounting of his financial and banking records. Accounting is an equitable remedy available for a defendant's breach of fiduciary duties. *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 801 n.12 (7th Cir. 2011). Although the plaintiff typically must show that it lacks an adequate legal remedy, there is an exception where the accounting is sought based on a breach of fiduciary duty. *Mann v. Kemper Fin. Cos.*, 618 N.E.2d 317, 327, 247 Ill. App. 3d 966, 187 Ill. Dec. 726 (1992); *see also Stiles v. Whalen*, No. 13 C 3516, 2013 WL 6730797, at *6 (N.D. Ill. Dec. 30, 2013). But the Court may find that an accounting is not necessary where the party seeking it "had full access to all pertinent records and documents" through discovery. *Newton v. Aitken*, 633 N.E.2d 213, 218, 260 Ill. App. 3d 717, 198 Ill. Dec. 751 (1994). Here, the Court has found that Elvir breached his fiduciary duty. The Court cannot say that Chicago Title had full access to his financial records, and thus finds it proper to grant Chicago Title's request for an accounting. *See Kurtz v. Solomon*, 656 N.E.2d 184, 275 Ill. App. 3d 643, 212 Ill. Dec. 31 (1995) (finding that trial judge abused discretion in denying accounting where plaintiffs proved breach of fiduciary relationship); *Union Oil Co. of Cal. v. Walters*, No. 05 C 3663, 1996 WL 332753, at *2 (N.D. Ill. June 14, 1996) (ordering accounting where employee engaged in scheme similar to that undertaken by Elvir).

## III. Punitive Damages

Chicago Title also requests an award of punitive damages of at least double its actual damages against Elvir. Punitive damages are intended "to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 401, 138 Ill. 2d 404, 150 Ill. Dec. 510 (1990). They are

appropriately awarded when the defendant has acted "with fraud, actual malice, deliberate violence or oppression, . . . willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Slovinski v. Elliot*, 927 N.E.2d 1221, 1225, 237 Ill. 2d 51, 340 Ill. Dec. 210 (2010) (quoting *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359, 74 Ill. 2d 172, 23 Ill. Dec. 559 (1978)). A breach of fiduciary duty may provide the basis for imposing punitive damages. *Tully v. McLean*, 948 N.E.2d 714, 729, 409 Ill. App. 3d 659, 350 Ill. Dec. 434 (2011); *In re Estate of E. Davis Wernick*, 535 N.E.2d 876, 887, 127 Ill. 2d 61, 129 Ill. Dec. 111 (1989). "While the 'preliminary question' of whether the facts of a particular case justify the imposition of punitive damages is properly one of law, the actual decision whether to award the damages and the amount is for the jury." *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, No. 93-C-2948, 1995 WL 33102, at *7 (N.D. Ill. Jan. 26, 1995) (citations omitted), *aff'd*, 87 F.3d 937 (7th Cir. 1996).

Here, Chicago Title asks the Court to find that, based on the evidence of record, a jury would be compelled to award punitive damages of two times its actual damages because Elvir's actions were willful and wanton and for his own benefit at his employer's expense. Chicago Title points to Elvir's issuance of more than 340 checks totaling over $1.6 million from Chicago Title accounts to various individuals and companies over a four-year period as evidence that his actions were willful and deliberate. The checks were written from various construction escrow accounts and deposited into several accounts not in Elvir's name, making them more difficult to trace. And because Elvir was the sole construction escrow administrator in the Westchester office, he was able to take advantage of his position to pursue his scheme. Moreover, at least according to Adnan and Larisa, Elvir represented that the checks he was asking Adnan to deposit into Rainbow AS's account were related to his father's investments, suggesting that Elvir was

11

willfully masking his actions even from his own family. A negative inference may also be drawn from Elvir's silence. Without anything to contradict this evidence in the record, there is no question that punitive damages are warranted. *See Union Oil Co.*, 1996 WL 332753, at *3 (awarding punitive damages where employee "intentionally and deliberately schemed to trick, deceive and defraud" his employer by inputting sham invoices and requesting payment on them, abusing his position and authority to steal approximately $285,535); *ICD Publ'ns, Inc. v. Gittlitz*, 24 N.E.3d 898, 915, 2014 IL App (1st) 133277, 388 Ill. Dec. 618 (2014) (affirming $2 million award of punitive damages where employee had embezzled $1.2 million by issuing improper checks); *Tully*, 948 N.E.2d at 730–31 (finding punitive damages appropriate for breach of fiduciary duty where defendants made more than 170 transfers over six years, created fictional accounts to hide transfers, and continued doing so even after promising to stop). *But see Groot Indus., Inc. v. Cordell*, No. 08 C 4907, 2009 WL 3852455, at *9 (N.D. Ill. Nov. 17, 2009) (refusing to impose punitive damages against employee who stole money he was responsible for where employer did not show that employee "acted with anything like actual malice, deliberate violence, or wanton disregard," noting that employer's recovery of employee's compensation on account of his breach of fiduciary duty was "tantamount to an award of punitive damages").

The Court reserves judgment on the amount of punitive damages that are appropriate in this case, however, as that question must be submitted to a jury. Chicago Title requests an amount equal to two times its actual damages but provides no support for why this amount is appropriate or reasonable. Because the amount of punitive damages is a question for the jury, *Mangren Research & Dev. Corp.*, 1995 WL 33102, at *7, and Chicago Title's specific request for double the amount of actual damages has not been properly justified, the issue will be submitted to a jury.

### IV. Unjust Enrichment (Count III)

Next, Chicago Title seeks summary judgment on its claim that all Defendants were unjustly enriched by their retention of Chicago Title's funds without a proper claim to those funds. To establish an unjust enrichment claim, Chicago Title must demonstrate that each Defendant "has unjustly retained a benefit to [Chicago Title's] detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Healthcare Servs. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989). Where the benefit was transferred to one of the Defendants by a third party (here, typically Elvir), a claim for unjust enrichment is recognized "(1) where the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) where the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) where the plaintiff for some other reason had a better claim to the benefit than the defendant." *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, --- N.E.3d ----, 2015 IL App (1st) 122725, ¶ 67. No showing of fault or illegality is required. *Id.*

The Defendants who responded to Chicago Title's summary judgment motion—Larisa, Adnan, Rainbow AS, and DC&L—do not contest Elvir's conduct. Indeed, they agree that Chicago Title is entitled to judgment on the unjust enrichment claim against Larisa for any wedding expenses for which Chicago Title funds were used and against DC&L for the $40,000 used to purchase the property located at 2925 W. Touhy, Unit 3. There is also no dispute that Elvir, Quijano, M&M, and Prestige obtained money to which Chicago Title has a better claim and that that money has not been returned to Chicago Title. Thus, Chicago Title is entitled to summary judgment against these Defendants as well.

13

Adnan and Rainbow AS contest this claim, however, arguing that there is a genuine dispute because Adnan testified that he did not keep any money from the checks he deposited for Elvir in Rainbow AS's account and that he instead gave it all to Elvir. The Court agrees that there is at least a question as to whether Adnan ever received any money individually to which Chicago Title has a greater claim, as he has testified that he never took any money for himself from the checks he deposited in Rainbow AS's account nor is there any evidence that any Chicago Title checks were deposited in Adnan's personal account. Thus, summary judgment is denied on the unjust enrichment claim against Adnan.[6]

But the Court does not agree that Adnan's withdrawal of the funds from the Rainbow AS account to give to Elvir creates a genuine issue as to Rainbow AS's liability on this claim. Rainbow AS cites no authority "for the proposition that the application of the [unjust enrichment] doctrine is dependent upon the nature of a defendant's ultimate use of the improperly acquired funds rather than the fact that the defendant unjustly deprived the plaintiff of their benefit." *In re Canopy Fin., Inc.*, No. 12-cv-04646, 2015 WL 3505010, at *5 (N.D. Ill. June 2, 2015) (denying defendants' motion for summary judgment on unjust enrichment claim where defendant argued that instead of retaining amounts improperly transferred to it, it used those funds to reimburse merchants for improperly made charges). Additionally, there is also testimony that some of the money that Adnan deposited in Rainbow AS's account remained in the company as Elvir's contribution for the trucks and business expenses. Rainbow AS may have had a defense that it qualified as a holder in due course with respect to these payments, *see Douglass v. Wones*, 458 N.E.2d 514, 519, 120 Ill. App. 3d 36, 76 Ill. Dec. 114 (1983), but no such argument has been made and the Court will not make it for Rainbow AS, *Vaughn v. King*,

---

[6] Chicago Title does not argue that the Court should pierce the corporate veil to hold Adnan liable on its claims against Rainbow AS.

167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."). Without such an argument, the fact that money remained in Rainbow AS's account further underscores the fact that summary judgment is appropriate against Rainbow AS. Thus, summary judgment is granted for Chicago Title with respect to its unjust enrichment claim against all Defendants except Adnan.

V.      **Constructive Trust (Count II)**

Chicago Title's request for a constructive trust against all Defendants flows from its other claims. Indeed, although Chicago Title brought this request as a separate claim, constructive trust is a remedy, not a separate claim, with "some form of wrongful or unconscionable conduct" generally "a prerequisite to the imposition of a constructive trust." *DiMucci*, 2015 IL App (1st) 122725, ¶ 75. A constructive trust may be imposed for a breach of fiduciary duty or where a defendant is found liable for repayment of funds under a theory of unjust enrichment. *Id.* ¶¶ 77–78. Specifically, "[w]here a defendant has obtained money to which he is not entitled, under such circumstances that in equity and in good conscience he ought not to retain it, the rightful owners of the money can claim it through a constructive trust to avoid unjust enrichment." *Norton v. City of Chicago*, 690 N.E.2d 119, 126, 293 Ill. App. 3d 620, 228 Ill. Dec. 810 (1997) (citation omitted) (internal quotation marks omitted). But wrongdoing is not always necessary, and a constructive trust may be imposed even where the person who received the money acted in good faith or is innocent of the wrongdoing. *Smithberg v. Ill. Mun. Ret. Fund*, 735 N.E.2d 560, 566, 192 Ill. 2d 291, 248 Ill. Dec. 909 (2000); *Norton*, 690 N.E.2d at 126. For a constructive trust to be imposed, however, "[t]he proceeds of the alleged wrongful conduct must exist as an identifiable fund traceable to that conduct, such that it can become the *res* of the proposed trust." *Eychaner v. Gross*, 779 N.E.2d 1115, 1143, 202 Ill. 2d 228, 269 Ill. Dec. 80 (2002).

15

The Court has found that Elvir, Quijano, Larisa, M&M, Rainbow AS, DC&L, and Prestige were unjustly enriched. The only question then is whether Chicago Title has properly identified funds traceable to the wrongful conduct over which a constructive trust may be imposed. Larisa argues that any money from Chicago Title went to pay for her wedding expenses and those funds (or goods) were never in her possession but rather paid directly by Elvir to the wedding vendors. Chicago Title does not provide any meaningful response to this argument, essentially conceding that it is not entitled to a constructive trust against Larisa but rather just that Larisa is personally liable to Chicago Title for the $17,677 used toward her wedding expenses. Because there is not an identifiable fund to which the amount by which Larisa was unjustly enriched can be traced, the Court will not impose a constructive trust on any funds or property in Larisa's possession. But the Court disagrees with DC&L's argument that a constructive trust cannot be imposed against it for the $40,000 that was used to purchase the property located at 2925 W. Touhy, Unit 3, as that is identifiable property, regardless of the fact that its value is greater than the amount to which Chicago Title is entitled. Thus, a constructive trust is imposed on the $40,000 invested by DC&L in the property located at 2925 W. Touhy, Unit 3.

Because the Court has found there is a genuine issue of fact on the unjust enrichment claim with respect to Adnan, the Court cannot impose a constructive trust on funds in Adnan's possession unless and until that claim is resolved in Chicago Title's favor. As for the other Defendants, Chicago Title has not carried its burden of tracing its entitlement to funds to identifiable funds or property in those Defendants' possession. Although Adnan testified that some funds went to Rainbow AS to cover Elvir's share of its business expenses, raising the possibility that a constructive trust could be imposed over those amounts, Chicago Title has not

16

suggested what property or funds in Rainbow AS's possession are appropriately within reach and Adnan testified that the trucks were repossessed by a bank. Without more details, the Court at this time cannot grant Chicago Title's remaining requests for constructive trusts, although it may revisit the issue if further documentation and explanations are provided.

## VI. Civil Conspiracy

Chicago Title has alleged several combinations of conspiracies involving Elvir and other Defendants—(1) Elvir, Adnan, and Rainbow AS (Count V); (2) Elvir and M&M (Count VI); and (3) Elvir and Quijano (Count VII). To establish the existence of a civil conspiracy, Chicago Title must demonstrate "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Although the existence of a conspiracy may be established through circumstantial evidence, the evidence may not be speculative. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258, 267, 188 Ill. 2d 102, 241 Ill. Dec. 787 (1999). Moreover, the circumstantial evidence "must be clear and convincing." *Id.* at 258. "Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." *Id.* A defendant's "[m]ere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." *Id.*

Here, Chicago Title presents no direct evidence of an agreement among Elvir, Adnan, and Rainbow AS; Elvir and M&M; or Elvir and Quijano. Chicago Title argues that the agreement among Elvir, Adnan, and Rainbow AS is evidenced by the fact that Adnan admits he deposited 121 checks issued by Chicago Title in Rainbow AS's account, that Adnan noticed the

checks were issued by Chicago Title, and that Adnan admits he and Rainbow AS did not perform any contracting work for Chicago Title. But Adnan also testified that he was told by Elvir that the money belonged to Elvir's father's and that Adnan believed at all times that the transactions were legitimate. Thus, Adnan's testimony calls into question whether there was an agreement, as a jury could find that he only inadvertently or negligently participated in Elvir's scheme, the entire time believing it to be legitimate. *See id.* Although the Court may question the veracity of Adnan's testimony, it is not its role to judge his credibility. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("[The court's] job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts."). Taking his testimony as true and bearing in mind Chicago Title's need to provide clear and convincing circumstantial evidence of an agreement, the Court finds that there is at least a question of fact as to whether Elvir, Adnan, and Rainbow AS entered into an agreement to misappropriate Chicago Title's funds and so summary judgment cannot be granted for Chicago Title on this claim.[7]

Similarly, although Chicago Title's motion is unopposed with respect to the conspiracy claims involving Elvir and Quijano and Elvir and M&M, the Court cannot conclude on the evidence before it that there is clear and convincing evidence of an agreement between these parties. Chicago Title argues that the agreement can be inferred from the negotiation of the checks to M&M and Quijano and the fact that there was no legitimate business purpose for M&M or Quijano to receive those checks. Chicago Title also relies on the adverse inference that

---

[7] In determining if a conspiracy exists, "[i]f the facts are as consistent with innocent conduct as they are with guilty conduct, then the evidence is neither clear nor convincing." *Lozman v. Putnam*, 884 N.E.2d 756, 774, 379 Ill. App. 3d 807, 318 Ill. Dec. 788 (2008). In *Lozman*, the court applied the heightened "clear and convincing" standard of proof to determine whether a genuine issue of fact existed and granted summary judgment for the defendant, finding that the plaintiff could not meet that burden. *Id.* Here, Adnan and Rainbow AS have not moved for summary judgment on the civil conspiracy claim, so the Court will let the claim proceed to trial.

18

can be drawn against Elvir and M&M (through Moldovan's assertion of the Fifth Amendment). *See LaSalle Bank*, 54 F.3d at 390; *Surface Dimensions*, 2011 WL 841515, at *9. In its memorandum, Chicago Title also claims that Quijano has asserted his Fifth Amendment privilege against self-incrimination but provides no support for this assertion. But this cannot meet the clear and convincing standard required for Chicago Title to prevail on its claim, *see Lozman*, 884 N.E.2d at 774, and so without more to establish an agreement between Elvir and Quijano or Elvir and M&M, the Court cannot grant summary judgment for Chicago Title on these civil conspiracy claims.

## VII. Preliminary and Permanent Injunctive Relief (Count VIII)

Finally, Chicago Title seeks summary judgment on its request for preliminary and permanent injunctive relief. The Court need not further address the request for preliminary injunctive relief, as that request has already been granted. The Court entered a temporary restraining order on April 21, 2011, Doc. 14, which was converted into a preliminary injunction on May 4, 2011, Doc. 18. That preliminary injunction continues in effect, and Chicago Title provides no reason why that order does not sufficiently protect its interests until final judgment is entered. And because the Court has found there to be several outstanding liability issues and Chicago Title has only set forth in conclusory terms why a permanent injunction is appropriate, the Court defers consideration of the propriety and proper terms of a permanent injunction until all liability issues are finally determined. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) (to obtain permanent injunction, plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

19

(4) that the public interest would not be disserved by a permanent injunction"). The Court notes, however, that Chicago Title's request for a permanent injunction is currently too broad and that prior to renewing its request for entry of a permanent injunction, Chicago Title should work with Defendants to craft a more tailored request.

## CONCLUSION

For the foregoing reasons, Chicago Title's motion for summary judgment [134] is granted in part and denied in part. Summary judgment is entered against Elvir Sinikovic on the claims for breach of fiduciary duty (Count I), unjust enrichment (Count III), and accounting (Count IV). The Court finds that punitive damages are appropriate against Elvir Sinikovic but that the amount of punitive damages is a question to be decided by a jury. Summary judgment is entered against Dennis Quijano, Larisa Spirtovic, M&M Flooring & Construction, Inc., Rainbow AS, Inc., DC&L, LLC, and Prestige of Chicago, Inc. on the claim for unjust enrichment (Count III). A constructive trust is imposed on the $40,000 invested by DC&L in the property located at 2925 W. Touhy, Unit 3, Chicago, Illinois.

Dated: August 28, 2015

_____
SARA L. ELLIS
United States District Judge